Good morning, Your Honor. Alan Ressler appearing on behalf of Mr. Smith. Your Honor, I'm here to address a single issue, and that's the issue certified by this Court as appealable, and that is a practical effect of allowing the State to petition to commit Mr. Smith as a sexually violent predator while the detainer was in place is, in essence, is a sentence of Mr. Smith to a life in the SEC without any possibility of being released from that facility. Let's talk about the possibility of release. Is this case now moot with the State of Alaska having withdrawn the detainer? No, for two reasons. One is that Mr. Smith at the time, there's two questions. One is did the State have jurisdiction to file a petition and to proceed with the case against him while a detainer was pending against him, in essence because at that juncture he was not subject to release and therefore he was not a threat to the community, so that's fact one. That's the total confinement issue that you've now litigated all the way through the Washington courts. That's correct. Unfortunately for your client, not obtained any relief. That's true, and that's the issue that's currently before this Court. He contends as a due process matter that the statute was incorrectly interpreted. So the question then would be the deference that we either give or do not give to the Washington courts. And the more important issue, and I think the one that you're asking with respect to the mootness issue, is this issue relating to his pathway for release. Well, to the extent that it imposed an obstacle to his successful completion of the SEC treatment and a chance of being released to less restrictive conditions, that obstacle is now removed. It is removed at this particular time. It existed for whatever period, 2003 to 2007 or somewhere in there. I don't know if it's a record. I included it in my last supplemental submission. I included a copy of the order that quashed the parole warrant, but I think that my motion to supplement the record was denied. But the reality is the reason we did that was it didn't meet the standards of 201, but I don't think that precludes us from asking the mootness question and taking, I don't know what it would be. Maybe it is judicial notice of the fact that the state has now quashed and the detainer no longer exists. I don't disagree. There is no doubt that the warrant has been quashed. So the question then remains is there any relief to Mr. Smith for the four and a half years that the detainer was in existence where this pathway for relief was not available? Is there evidence in the record that he sought less restrictive conditions during that period and was denied because of the existence of the detainer? No. Then we've got a causation issue. Well, except that you can read the statute itself and you can see that there's an impossibility of being released to less restrictive while the detainer is in existence. There is just no possibility of petitioning to be in a less restrictive so long as the detainer is in place. The other answer to your question about mootness is this, is that there's nothing to prevent the parole commission from refiling their detainer any time they want. They have not lost jurisdiction. The state of Alaska still has this. He's still technically on parole to the state of Alaska and will remain on parole to the state of Alaska. The state of Alaska can refile there. So I think the court needs to address the issue. Is there any sense at all in the record available that we have as to why the state did that? I mean, there's an exception to the mootness doctrine for voluntary cessation, for example. But usually the voluntary succession exception operates when there's some suspicion that they ceased in order to produce the mootness. Again, I submitted some documents in my supplemental suggesting that there was some collusion between the state of Alaska and the state of Washington in a series of emails back and forth that were produced to Mr. Smith in response to a public records request, suggesting that the two states were bent in intent on keeping him in custody for as long as they can in any way they can. So maybe voluntary succession might save this one. Yeah. OK. So the long and the short of this is that if it only arises in this peculiar circumstance, too, because if this were a detainer for a new criminal charge, it would be easy to resolve. If he goes through the process of asking that the detainer to try him on the new charges, on the new criminal charges, either you try him on the new criminal charges or the charges are dismissed for speedy trial. So it's only in the peculiar circumstance when a parole detainer is on the books that this could arise, where the detainer remains in existence even after the petitioner, Mr. Smith, seeks to have the detainer resolved. And it's clear that he sought to have the detainer resolved without success. So the relief, I think, is the relief that we've requested is to vacate the the order committing him as a sexually violent predator. Again, for the reasons that Judge Tallman indicated, which was the ones that were raised in the court of appeals. And then the other issue is whether the state has a right to to pursue these these charges. Excuse me. These pursue a claim that Mr. Smith is a sexually violent predator and attempt to sentence him to the special commitment center. While that while that parole detainer was in existence. Unless the court has any other questions, I don't have anything else to add. Well, you'll get a chance to respond. Thank you. Thank you, Your Honor. May it please the court. My name is Greg Rosen. I represent the respondent in this matter. I'm an assistant attorney general. There are two primary reasons that jump out why the respondent should prevail in this particular case. The first is that Mr. Smith's habeas petition should be denied because he fails to cite to a Supreme Court case that demonstrate that the Washington Court of Appeals decision in this case was objectively unreasonable. And there's no question that in the posture of this habeas that that provision of AEDPA applies. Yes, Your Honor. Yes. At page 25, I believe, of Mr. Smith's opening brief, he refers to the fact that the state court adjudication committing him under RCWS 7109 violates clearly established federal law, the federal due process clause. And the Supreme Court has made clear in Williams versus Taylor, and I believe other cases as well, that clearly established federal law means the holdings of the Supreme Court, not the federal due process clause itself. So for that reason itself, Mr. Smith's habeas petition should be dismissed by this court. Secondly, the respondent should also prevail because the Washington Court of Appeals decision only involved an interpretation of state law. And the Supreme Court has also held here, and I'm quoting Bradshaw versus Ritchie, quote, we have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenge conviction, binds a federal court. I'm not sure I disagree with you. I might rephrase it. It's obvious that our habeas jurisdiction does not extend to telling the Washington courts what Washington law is. That's understood. Yes. But just because they relied on Washington law doesn't mean they might not also have violated the due process clause. Well, that may be true, Your Honor. That's correct. And I think this court said as much in McSherry versus Block that the state court's interpretation of state law, that's binding on a court sitting a federal habeas. The constitutional implications of that interpretation is certainly fair game for this court. Counsel, a question on my mind is this. If when Smith's released from his first incarceration in Washington, if instead of going into civil commitment he went directly to an Alaskan jail, what is the interest of the state of Washington? In other words, what's the interest of its citizens in trying to keep him in civil commitment? If the state is unable to file a civil commitment petition under RCWS 7109, at the time that Mr. Smith remains in confinement, the state would be unable to do so if he leaves confinement without having to prove a recent overt act under RCWS 7109. What that means essentially is Mr. Smith, if he reoffends, that's the only way the state would be able to file an SVP petition if he has already left confinement. And the other issue, and I want to address this because it was brought up in Mr. Smith's opening brief to this court, the other state interest, Judge Gould, is that the state would be unable to extradite Mr. Smith back from Alaska based on, hopefully, a pending civil commitment process. The state can't extradite somebody for a civil process only for crimes, an escape, or violating terms of probation, parole, or bail. Does the state know, like, how long he would be incarcerated in Alaska if they had just sent him there in the first place? Well, Mr. Smith has represented that he would have 215 days to serve of his prior Alaska parole violation. I don't have any indication that that would be incorrect. I may have some dispute with the amount of community supervision which would follow the 215-day commitment. I think he represented at various times in the state court seven and eight years, but I don't have any way to verify that at this time. But the state very much has a strong, compelling interest to be able to file an SVP petition while Mr. Smith remains in confinement for the reasons I mentioned. One, otherwise it's stuck with trying to prove a recent overt act if he leaves confinement, and there is no way to extradite him under RCW 1088-400 unless it's for a crime, an escape, or violating terms of bail, parole, or probation. And Mr. Smith makes great points in his opening brief that the state would, in fact, have been able to extradite him back from Alaska. And I would respectfully submit that that is simply untrue. I think Mr. Smith indicated in his opening brief that the state of Washington could extradite him back based on, for example, a violation of community placement. Yes, that's certainly true because community placement comes within the rubric of his crime, of his sentence, his criminal sentence. But you can't extradite somebody ostensibly for violating community placement when the real reason the state wants him back is to commence civil commitment proceedings for the sexually violent predator under 7109. And that's the reason. Well, he would have to first be placed in a community placement location in Washington, would he not? That's correct, Your Honor. And he would have to violate, in some respect, the conditions of community placement in order to commence an extradition based on that. When he had fully executed his, I hesitate to use this term, period of total confinement in the state of Washington, when the SVP proceedings were initiated, he would have been still under the supervision of the Department of Corrections in the absence of an SVP proceeding, would he not? That's correct. Mr. Smith was due to be released from total confinement on March 5th, 2003. The state filed its SVP petition the day before on March 4th of 2003. And then he was transferred as a pre-commitment detainee to the, what, the SCC as soon as that petition was filed? I don't recall where his physical person was taken once the petition was filed, but I believe that's correct. I believe he was probably sent to a facility, which is run by the Department of Social and Health Services, because he would no longer be within or under the DOC at that point. Are there other places beside the SCC where they sent him to Monroe? I don't know the answer to that question, Your Honor. Now, the courts addressed briefly the issue as to the detainer being quashed by the state of Alaska. Counsel indicated that there's nothing stopping the state from, I guess, reimposing its parole warrant. I don't know if that's necessarily true or not. I know at this point in time, and I don't think counsel would disagree, the warrant's quashed. What do we know about why it was quashed? I don't know the answer to that either. I was curious myself looking through the documents that Mr. Ressler had submitted in his second motion to supplement the record. I don't know the answer to that question. Do you think the case is moot as a result of the quashing? It is not technically moot. I wouldn't agree with that. I think the underlying fact, which forms the basis of Mr. Smith's primary argument, has certainly been altered to a tremendous degree. But as to technical mootness, I couldn't agree with that. And why is that? What, in your view, saves it from mootness? Well, I mean, the essential definition of mootness is that the court can no longer grant him any effective relief. I've argued two other bases based on AEDPA and based on the fact that the state court interpretation issued why the court can't grant him relief anyway under AEDPA. But as to the specific question of mootness, if the underlying issue remains that Mr. Smith was not about to be released because Alaska's detainer remained in place, then in one sense it would be moot because the court no longer could provide any effective relief as to that particular issue. I mean, the whole fight in this case is what's the effect of the Alaska detainer. That's true. Right, but we could say that because the retainer was in effect when he was committed, the commitment was invalid. I mean, that's his theory. And then the state, I guess, would have to try to institute a new proceeding against him. That's correct. And what Judge Gould has just indicated, Judge Fletcher, may be a reason why it's not technically moot. And I certainly don't want to be in a position where I'm arguing against myself. If the court believes that it's moot, then. To a certain extent, both sides are always arguing against itself because you want a decision from us, and we're trying to decide whether or not we have the authority to render one that has a practical effect that's actually going to grant relief one way or the other. And I have to say I'm not totally satisfied with either of your answers to our questions on mootness. If there is no evidence in the record that the detainer played any role in his continued incarceration, if I can use that term, detention at the SCC, and if he never sought a less restrictive placement so that the detainer barred less restrictive placement, then I don't see any causation between the existence of the detainer and all the things that happened to him that would afford any kind of relief. I just don't see causation there. I don't want to disagree with my distinguished colleague before we've gone through all the precedent and discussion, but it just strikes me initially, just to put it on the table, that if the detainer was in effect when he was committed, that that lets him challenge the legality of the commitment as he's done under the Due Process Clause. And that the relief, the reason it's not moot, in my view, is that we could as relief say his commitment order was unconstitutional. Now, it might be a new proceeding would then follow, and since he's no longer detained, he wouldn't have that issue to defend, but I don't see that that stops us. So Judge Tallman can illuminate me when we confer. We can start our conference now, but let me just ask you, Counsel, what role did the detainer play in the commitment, as I understand? None. It played no role whatsoever, Your Honor. I mean, the fact that it existed is totally irrelevant to why he was sent to the SEC. That's exactly correct. Mr. Smith was committed as a sexually violent predator under RCWS 7109 based on the evidence that was presented to the King County jury. The detainer was completely irrelevant, not only in fact, but I would submit irrelevant in law. Presumably the jury never heard about the existence of the detainer. I think that's a very sound assumption. Well, the hydrogen bomb of litigation is pre-litigation mootness, otherwise known as standing, meaning if it had no effect, I mean, had no effect, why are we here talking about it? I would agree. I think it's entirely irrelevant. I think it's at best a red herring, and I don't think it even makes the red herring standard. Does the Court have any other questions for me at this time? I don't. I would ask respectfully that this Court affirm the decision of the District Court and dismiss Mr. Smith's habeas petition with prejudice. If we reach the merits. Yes. I'm asking this Court. Okay. Thank you. Mr. Ressner? Yes, I have to quickly disagree with what appears to be the mootness issue. And the standing issue. The question is what earthly difference does the detainer make? Because the very existence of the detainer prevents him from going through the very elaborate statutory process that exists that eventually may result in him being released from detention. Now, because the statute speaks of what it is that has to happen in order for a person to be released to a lesser restrictive alternative. And then it sets forth in very succinct detail exactly what this individual has to do while he is in this lesser restrictive alternative. But, Mr. Ressner, he doesn't get to the point of being eligible for less restrictive confinement, detention, whatever you want to call it, until he has progressed to some point with his treatment in the program. And I thought you told me earlier that he never petitioned for release to less restrictive alternative. It would have been a fruitless and useless act for him to petition because it requires his release. And his release can't happen because of the detainer. Okay. But you're asking, this is a 2241 petition, correct? You are asking for a writ of habeas corpus to issue to the custodian of your client, ordering as relief his immediate release because he's been unconstitutionally held. And I'm still trying to figure out what role the detainer played in holding him when he was found civilly committable by a King County jury by proof beyond a reasonable doubt that he's a sexually violent predator. It did not. It did not. But what happened is this, is the existence of the detainer transformed this detention into a lifetime detention where it was impossible for him to ever petition to be released. So it became a punitive detention. In essence, the existence of the detainer makes this detention punitive versus whatever else the rubric is for the detention. But he could file to be released today, could he not? And then the state can no longer hold the detainer up as a reason why. They can make all the arguments on the merits that he hasn't been cured and that he's not safe to be released to the community, in which case he's not going to get released. That's true. He could petition today for all the remedies that are available to him under the statute and then whoever it is that makes those decisions would have to make a determination whether he's eligible for the least restrictive alternative. Provided, that is, that this detainer doesn't come back into play. And we don't know that it won't. At the moment we have to assume that it won't because it doesn't exist. And I still don't understand how we can give him a writ of habeas corpus for a reason that no longer exists. Well, you could give him the writ of habeas corpus for the reasons Judge Gould enumerated, which is that he should not have been tried as a sexually violent predator in the first place because of the interpretation of the statute that he was not going to be released. But you haven't convinced me yet that the detainer played any role in the King County Superior Court jury's determination. Well, it didn't. The statute has to be narrowly drawn, and the statute is narrowly drawn when it deals with a person who is about to be released into the community. And so the state then petitions. In this particular case, the first issue that we raise, which doesn't relate to the detainer, it doesn't relate to the detainer in the sense that it doesn't make a difference whether the detainer now exists or not. It existed at the time. And because it existed at the time, he was not about to be released. The statute was not properly interpreted because the state allowed the prosecution to proceed against him even though he was not about to be released into the community, and therefore he did not present a danger to the community. Okay, but to get there, we would have to declare that the rulings by the Washington courts are objectively unreasonable and in contravention of U.S. Supreme Court law. And as to that question, it can't be moved because that question was proceeding against him. And I say that I think that you ought to respond to the second one as well simply because it would resolve the question of whether or not, if the detainer came back into play, whether or not they should allow a detainer to be placed against him where he has no ability to seek extradition and have the issue resolved by the Alaska State Court.  Thank you, Your Honor. Thank you. Thank you very much. Thank both sides for your arguments. Smith v. Richards now submitted for decision.
judges: Fletcher, Gould, Tallman